**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 07-cv-01559-LTB-KLM

CITY OF COLORADO SPRINGS,

       Plaintiff,

v.

ELAINE L. CHAO,
in her capacity as Secretary of the United States Department of Labor, and
the UNITED STATES DEPARTMENT OF LABOR,

       Defendants.

___

## ORDER
___

This case is before me on putative intervenor, Amalgamated Transit Union Local 19's ("Local 19"), Motion for Leave to Intervene **[Docket # 6]**, Plaintiff, City of Colorado Springs' ("Colorado Springs"), Objection **[Docket # 10]**, and Local 19's Reply **[Docket # 11]**. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT Local 19's motion **[Docket # 6]**.

### I. BACKGROUND

The determinative facts do not appear to be disputed. In April 2007, Colorado Springs applied for a grant from the Federal Transit Administration ("FTA") for the purchase of two buses to be used in the operation of Colorado Springs' Mountain Metropolitan Transit ("MMT") service. As part of the federal grant process, the Department of Labor ("DOL") must certify under 49 U.S.C. § 5333(b) that a labor protection agreement is in place providing "fair and

equitable" protections to the employees who may be affected by the grant. When entered into by the government agency requesting funding and the affected employees, such labor protection agreements are known as "13(c) agreements." When these parties cannot agree on terms, the DOL will determine fair terms and impose a "13(c) arrangement." Colorado Springs and Local 19 entered into a 13(c) agreement covering the MMT in 1981 ("1981 agreement").

On April 20, 2007, the DOL notified Colorado Springs of its intent to certify the grant application under the 1981 agreement. Pursuant to DOL guidelines, both Colorado Springs and Local 19 filed objections to certain terms of the 1981 agreement on May 7, 2007.

DOL guidelines require review of objections to 13(c) agreements to determine if such objections are "sufficient" or "insufficient." 29 C.F.R. § 215.3(d). If objections raise material issues that require alternative employee protections or raise concerns regarding changes in legal or factual circumstances that materially affect the rights or interests of employees, the DOL considers the objections to be "sufficient" and directs the parties to commence negotiations on the objections. *Id*. If the parties are unable to come to agreement, the DOL will impose a 13(c) arrangement. *Id*. If the objections are "insufficient," the DOL will certify the grant application under the existing 13(c) agreement. *Id*.

On May 17, 1007, the DOL found the objections to be insufficient and certified the grant under the 1981 agreement. Colorado Springs has thus far refused to accept the grant on the basis that the objected-to portions of 1981 agreement contain labor protections that exceed the requirements of federal and Colorado law.

On July 24, 2007, Colorado Springs filed the present action under the Administrative Procedure Act ("APA") claiming the DOL's May 17, 2007, decision was arbitrary and capricious

2

and seeking declaratory and injunctive relief under the Declaratory Judgment Act. Local 19 filed a Motion to Intervene on September 28, 2007, claiming the employees it represents have an interest in the outcome of this action that may be impaired or impeded by a judgment favoring Colorado Springs and that such interest is not adequately protected by the DOL. Accordingly, Local 19 asserts intervention of right is warranted under FED. R. CIV. P. 24(a). In the alternative, Local 19 argues it should be granted permissive intervention under FED. R. CIV. P. 24(b) because its claim that the 1981 agreement should be enforced as valid shares questions of law and fact common with Colorado Springs' motion under the APA.

## II. INTERVENTION OF RIGHT UNDER RULE 24(a)

Rule 24(a) allows intervention of right when authorized by statute—which does not apply here—or when (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may, as a practical matter, be impaired or impeded by the outcome of the action; and (4) the applicant's interest is not adequately represented by existing parties. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002). The Tenth Circuit liberally allows intervention so as to involve as many apparently concerned parties as possible—taking into consideration efficiency and due process. *See id*.

The first prong of this analysis is not disputed. Local 19 filed its motion two months after the complaint was filed with this Court and only one day after Defendants filed their answer.

### 1. Local 19's impaired interest

I construe the "interest" and "impairment" analysis together rather than discretely. *See San Juan County, Utah v. United States*, — F.3d —, No. 04-4260, 2007 WL 2838968, at *29

3

(10th Cir. Oct. 2, 2007). "For example, a lesser showing of impairment may be required by the court if the applicant's interest is very strong. Likewise, intervention of right may be granted if the applicant's claimed interest may be significantly impaired by the action, even if some uncertainty exists regarding the sufficiency of that interest." *Id*. Courts will focus their inquiry on the practical effect of the litigation on a prospective intervenor. *Id*. at *22.

The purpose of allowing intervention is to increase the likelihood that the party whose interest the intervenor seeks to support will be victorious—thus protecting the threatened interest. *San Juan County*, *supra*, at *34. The impairment or impediment on the prospective intervenor need not be direct so long as some practical consequence is foreseeable. *Id*. at *32, *37. In an APA case, such as this one, if an unfavorable decision would affect how the ultimate decision is potentially made, this is sufficient to allow intervention of right even if it is not clear that the ultimate decision would harm the prospective intervenor's interest. *Id*. at *34. In other words, I need not weigh the likelihood of possible outcomes, so long as a harmful outcome is possible. *See id*. ("Courts regularly grant applications for intervention on the ground that the result of the litigation could affect which decisionmaker would resolve a matter concerning the applicant, even though it is far from certain that the applicant's preferred decisionmaker would act more favorably toward the applicant than the alternative decisionmaker.").

The subject of the present action is the 1981 agreement. Although this matter arises under the APA, this does not change my analysis. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001) ("The interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is *related to the property that is the subject of the action*.").

4

Applying the analysis of *San Juan County*, it is clear Local 19 has an interest in the 1981 agreement that may, as a practical matter, be impaired or impeded by the outcome of the action. Colorado Springs requests—at a maximum—that I declare portions of the 1981 agreement unnecessary. *See* Compl. ¶ 124. Any direct challenge to the 1981 agreement sufficiently impacts Local 19's interests as a signatory to that agreement to allow intervention as a matter of right. *See Utah Ass'n of Counties*, *supra*, 255 F.3d at 1252 (holding where the plaintiffs challenged the creation of a monument in which the prospective intervenors had a direct interest, this was sufficient to allow intervention as a matter of right).

Even if I were to consider only the minimum relief requested—a declaration under the APA that the DOL improperly found Colorado Springs' objections to be insufficient **[Docket # 10, ¶ 31]**—this would still allow intervention of right. *See San Juan County*, *supra*, at *37 ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation.") (citing *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)). Should I hold the DOL improperly found Colorado Springs' objections to be insufficient, the DOL would direct Colorado Springs and Local 19 to commence negotiations on the objected-to terms. If those discussions are unfruitful, the DOL would impose its own terms. While it is not definite that the terms imposed by the DOL would be less protective of employees' rights than the terms of the 1981 agreement, it is certainly a real possibility that they would be so. Colorado Springs cannot be heard to argue that such a reduction in employee rights is too "remote" or "speculative" to afford Local 19 a right to intervene. In fact, the underlying complaint in this matter seeks exactly such an outcome. *See*, *e.g.*, Compl. ¶¶ 21, 22, 108, 109, 112, 118, 120, 121, 123, 124. Thus,

even though any reduction in the rights of the employees protected by Local 19 would be contingent on the outcome of the underlying litigation, it is nonetheless sufficient for intervention of right under *San Juan County*.

Looking beyond the potential effect this case may have on the 1981 agreement, Local 19 has an additional and direct interest in the underlying litigation as a whole. The DOL's present ruling preserves the status quo. Local 19 need invest no time, effort, or expense to maintain the benefits of the 1981 agreement. Should I grant even the minimum relief requested, Local 19 will be required to pursue negotiations with Colorado Springs. Far from being contingent, such a consequence would directly impact Local 19 by requiring it to invest its resources into defending an agreement that is currently considered valid by the DOL. Accordingly, Local 19 has an interest in this litigation that may, as a practical matter, be impaired or impeded by the outcome of the action. *See Utah Ass'n of Counties*, *supra*, 255 F.3d at 1254.

## 2. Adequate representation

Although Local 19 satisfies the first three requirements of Rule 24(a), I must nonetheless deny intervention of right if Local 19's interest is adequately represented by the DOL. An applicant for intervention as a matter of right bears the burden of showing inadequate representation, but that burden is minimal and requires only a showing that representation "may" be inadequate. *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972)).

The Tenth Circuit generally presumes representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties. *San Juan*, *supra*, at *39 (citing *City of Stilwell v. Ozarks Rural Elect. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)).

When the party on which the intervenor must rely should intervention be denied is the government, however, the interests generally cannot be presumed identical. *See Utah Ass'n of Counties*, *supra*, 255 F.3d at 1254–55. The government is obligated to represent the interests of the public, and such obligation is not always coextensive with an intervenor's particular interest. *See id.* at 1254.

When the intervenor's interests are similar—but not identical—to those of one of the parties, intervention should generally be allowed unless it is clear that the party will provide adequate representation for the absent intervenor. *See* 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1909 ("[A]ll reasonable doubts should be resolved in favor of allowing the absentee, who has an interest different from that of any existing party, to intervene so that the absentee may be heard in his own behalf."). Here, the DOL and Local 19 have different interests. While the DOL must show it complied with the APA, Local 19 seeks to defend the substance of the 1981 agreement from declaratory and injunctive attack. This latter interest is purely parochial and personal to the union that negotiated the agreement. *See Utan Ass'n of Counties*, *supra*, 255 F.3d at 1255–56. Because Local 19's interest in protecting the 1981 agreement does not implicate a matter of sovereign interest, there is no reason to think the government will adequately represent it. *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). Accordingly, the posture of this case adequately demonstrates DOL's interests are not coextensive with Local 19's and intervention of right is appropriate.

### III.  PERMISSIVE INTERVENTION UNDER RULE 24(b)

Rule 24(b) allows permissive intervention when the applicant's claim or defense has question of law or fact in common with the main action. When a petitioner qualifies for

7

intervention of right under Rule 24(a), it is unnecessary to consider whether there exists a basis for permissive intervention under Rule 24(b). *See Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 384 (10th Cir. 1977). Nonetheless, Local 19's interest in protecting the 1984 agreement clearly involves common questions of law and fact with Colorado Springs' request for injunctive and declaratory relief voiding terms of that contract. *See Venegas v. Skaggs*, 867 F.2d 527, 529–31 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990); 59 AM. JUR. 2D *Parties* § 207. As I ruled above, this interest is not adequately protected by the DOL. Thus, permissive intervention is also appropriate.

## IV. CONCLUSION

Accordingly, Amalgamated Transit Union Local 19's, Motion for Leave to Intervene **[Docket # 6]** is GRANTED. Amalgamated Transit Union Local 19's proposed Answer **[Docket # 6-2]** is ACCEPTED as filed.


Dated: November   20  , 2007.

                                                                   BY THE COURT:

                                                                     s/Lewis T. Babcock  
                                                                   Lewis T. Babcock, Judge