IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01559-LTB

CITY OF COLORADO SPRINGS,

       Plaintiff,

v.

ELAINE L. CHAO,
in her capacity as Secretary of the United States Department of Labor, and
the UNITED STATES DEPARTMENT OF LABOR,

       Defendants,

and

AMALGAMATED TRANSIT UNION LOCAL 19,

       Intervenor.
_____

**MEMORANDUM OPINION AND ORDER**
_____

Babcock, J.

       Plaintiff, City of Colorado Springs ("the city" or "Colorado Springs") seeks reversal of a decision of the Secretary of Labor ("Secretary") dated May 17, 2007. Jurisdiction is proper under 5 U.S.C. §§ 702 and 704, and 28 U.S.C. § 1331. Oral argument would not materially assist the determination of this appeal. After consideration of the papers and the administrative record, and for the reasons stated below, I AFFIRM the May 17, 2007, decision.

### I. BACKGROUND

       The determinative facts do not appear to be disputed. In April 2007, Colorado Springs applied for a grant—grant number CO-04-0021—from the Federal Transit Administration

("FTA") for the purchase of two buses to be used in the operation of Colorado Springs's Mountain Metropolitan Transit ("MMT") service. Operations of MMT are provided under contract with Laidlaw Transit Services, a private-sector business.

As part of the FTA grant process, the Department of Labor ("DOL") must certify under the Urban Mass Transportation Act Section 13(c) ("Section 13(c)")—codified at 49 U.S.C. § 5333(b)—that a labor protection agreement is in place providing "fair and equitable" protections to the employees who may be affected by the grant. When entered into by the transit entity requesting funding and the affected employees, such labor protection agreements are known as "Section 13(c) agreements." Colorado Springs and Amalgamated Transit Union Local 19 ("Local 19") entered into a Section 13(c) agreement covering MMT that was certified by DOL to meet the "fair and equitable" requirement in 1981 ("1981 agreement"). The 1981 agreement contains no time limit on its duration.

On April 20, 2007, DOL notified Colorado Springs of its intent to certify the grant application under the 1981 agreement. Pursuant to DOL guidelines, both Colorado Springs and Local 19 filed objections to certain terms of the 1981 agreement on May 7, 2007. DOL regulations require review of objections to Section 13(c) agreements to determine if such objections are "sufficient" or "insufficient" within ten days. *See* 29 C.F.R. § 215.3(d).

On May 17, 2007, DOL found the objections of both parties to be insufficient and certified the grant under the 1981 agreement. Colorado Springs has thus far refused to accept the grant on the basis that the objected-to portions of 1981 agreement contain labor protections that exceed the requirements of federal and Colorado law. On July 24, 2007, Colorado Springs filed the present action under the Administrative Procedure Act ("APA") claiming DOL's May 17,

2007, decision was arbitrary and capricious and seeking injunctive relief and declaratory relief under the Declaratory Judgment Act.

## II. SECTION 13(c) PROCEDURAL REQUIREMENTS

Under Section 13(c), for any entity seeking federal funding for transportation projects, "[a]s a condition of financial assistance . . . the interests of employees . . . shall be protected under arrangements the Secretary of Labor concludes are fair and equitable." *See* 49 U.S.C. § 5333(b). The interests protected include—at a minimum—"the preservation of rights, privileges, and benefits under existing collective bargaining agreements, the continuation of collective bargaining rights, the protection of individual employees against a worsening of their positions related to employment, assurances of employment to employees of acquired mass transportation systems, priority of reemployment, and paid training or retraining." *See id.*; Guidelines, Section 5333(b), Federal Transit Law, 60 Fed. Reg. 62964, 62964 (1995). In 1995, DOL issued regulations to assist the parties to Section 13(c) negotiations. *See* 29 C.F.R. § 215.3 (the "Guidelines").

The Guidelines establish a step-by-step procedure for certifying that the interests of employees are protected by "fair and equitable" employment arrangements. Once an application for funding has been made, DOL will determine whether a previous Section 13(c) agreement exists that has been certified as "fair and equitable" in a prior grant application. *See* 29 C.F.R. § 215.3(b). When—as here—such an agreement exists, the parties are given fifteen days to submit objections to the agreement's terms. *See* 29 C.F.R. § 215.3(d)(1). Either party may submit objections and "the definition does not favor either party over the other." *See* Guidelines, 60 Fed. Reg. at 62965. Thus, a transit agency can object "where it believe[s] that existing

3

protections include provisions that are no longer legally required or that are burdensome." *See id*.

If the objections raise material issues that require alternative employee protections or raise concerns regarding changes in legal or factual circumstances that materially affect the rights or interests of employees, DOL considers the objections to be "sufficient" and directs the parties to commence negotiations on the objections. *See* 29 C.F.R. § 215.3(d)(3). If the objections are "insufficient," DOL will certify the grant application under the existing agreement. *See* 29 C.F.R. § 215.3(d)(5).

When the objections are considered "sufficient," DOL will direct the parties to negotiate the specified objections and will provide mediation assistance where appropriate. *See* 29 C.F.R. § 215.3(d)(6). If the parties are unable to come to an agreement, DOL will impose an interim "Section 13(c) arrangement." *See* 29 C.F.R. § 215.3(d)(7). The interim Section 13(c) arrangement "will be based on terms and conditions determined by the Department which are no less protective that the terms and conditions included" in the previously-certified Section 13(c) agreement. *See* 29 C.F.R. § 215.3(d)(7). If the parties are still unable to come to agreement, DOL will then impose a final Section 13(c) arrangement within sixty days. *See* 29 C.F.R. § 215.3(e)–(g).

### III. PROCEDURAL HISTORY

As previously noted, the parties negotiated a Section 13(c) agreement in 1981. The 1981 agreement contains several provisions that are alleged to exceed the bare minimum required under Section 13(c). These provisions are: (1) binding interest arbitration; (2) an economic floor agreement which requires that any modification of bargained-for terms must be of "equal or

4

greater economic value"; (3) a new jobs clause which gives union employees a right to jobs created as a result of a federal project; and (4) a continued employment guarantee that protects employment in the event of a transfer of ownership in the transit entity. Colorado Springs objected to each of these four provisions as well as a provision excluding the city from any renegotiation of invalidated terms. [AR 25–45].

On May 17, 2007, DOL found the objections to be insufficient and certified the grant application under the 1981 agreement. [AR 83–84]. DOL's decision letter stated simply: "The Department has determined that the City has not demonstrated a sufficient showing of material issues or changes in legal or factual circumstance in accordance with the Guidelines at 29 C.F.R. § 215.3 that are not otherwise addressed by the negotiated protective agreements set forth in the Department's referral letter." Referring to the interest arbitration clause, DOL added: "should the Colorado Courts, at some time in the future, rule that interest arbitration is not available to the private sector employees of the management company represented by ATU Local 19 or that the interest arbitration provision of the City's 13(c) agreement is unenforceable upon the City, the Department will consider the circumstances then presented."

On July 24, 2007, Colorado Springs filed its complaint commencing this litigation and challenging DOL's May 17, 2007, decision under the APA.

## IV. STANDARD OF REVIEW

The APA limits the scope of judicial review, allowing courts to set aside a final agency decision only if it is found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or not supported by substantial evidence. *See Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1229 (10th Cir. 2005); *IMC Kalium Carlsbad, Inc. v. Interior Bd.*

5

*of Land Appeals*, 206 F.3d 1003, 1009 (10th Cir. 2000). An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). The party challenging the agency action bears the heavy burden of proving that it was arbitrary and capricious. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008).

Although review under the "arbitrary and capricious" standard is narrow, I am required to engage in a substantial inquiry and "a probing in-depth review." *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974); *Lamb v. Thompson*, 265 F.3d 1038, 1046 (10th Cir. 2001). The agency's decision "need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1035 (10th Cir. 2002). I must ask "whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *Lamb*, 265 F.3d at 1046. While I "may not supply a reasoned basis for the agency's action that the agency itself has not given," I will "uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Motor Vehicle Mfrs. Ass'n*, *supra*, 463 U.S. at 43.

Under the "substantial evidence" test, I must affirm the agency's decision if it is based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991) (citing *Consolo v. Fed. Mar.*

6

*Comm'n*, 383 U.S. 607, 620 (1966)). For evidence to be "substantial" it must be something more that a mere scintilla, but may be less than the weight of the evidence. *See id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The "substantial evidence" test imposes an affirmative duty on this Court to review the record to ensure the agency's action is supported by specific facts. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1576 (10th Cir. 1994).

I am not empowered to substitute my judgment for that of the agency. *See Foust*, *supra*, 942 F.2d at 714. Because the substantiality of the evidence must be based upon review of the record as a whole, however, I am likewise not free to disregard contrary evidence in the record. *See Bowman Transp.*, *supra*, 419 U.S. at 284 n.2; *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

## V. ANALYSIS

Colorado Springs raises ten claims for relief: (1) DOL acted in an arbitrary and capricious manner because it failed to adequately explain its decision (Claim One); (2) DOL acted in an arbitrary and capricious manner because it reached a decision that treats Colorado Springs differently from other regulated entities (Claim Two); (3) DOL's decision was arbitrary and capricious because it imposed unconstitutional interest arbitration on Colorado Springs that is not required by Section 13(c) (Claim Three); (4) DOL's decision was arbitrary and capricious because it imposed a new jobs clause on Colorado Springs that is not required by Section 13(c) (Claim Four); (5) DOL's decision was arbitrary and capricious because it imposed a collective bargaining floor on Colorado Springs that is not required by Section 13(c) (Claim Five); (6) DOL's decision was arbitrary and capricious because it imposed a continued employment guarantee on Colorado Springs (Claim Six); (7) DOL's decision was arbitrary and capricious

7

because it excluded Colorado Springs from participating in the development of alternative provisions in the Section 13(c) agreement (Claim Seven); (8) DOL acted in an arbitrary and capricious manner because it misapplied the Guidelines in a way that circumvented the requirements of 49 U.S.C. § 5333(b) (Claim Eight); (9) a request for injunctive relief ordering DOL to withdraw the final certification of grant CO-04-0021 and ordering DOL to grant an interim certification on the basis of the model Capital Assistance Protective Arrangement noted in the Guidelines (Claim Nine); and (10) a request for declaratory judgment holding that the four objected-to provision are not required by Section 13(c) (Claim Ten).

### A. Four Provisions that Exceed the Minimum Requirements of Section 13(c)
### (Claims Three, Four, Five, and Six)

It is appears clear that the four provisions—excluding the provision regarding Colorado Springs's participation in renegotiating invalidated terms—objected to by Colorado Springs exceed the minimum requirements of Section 13(c). *See*, *e.g.*, *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 767 F.2d 939, 954 (D.C. Cir. 1985) (holding Section 13(c) does not require binding interest arbitration); UMTA Application, *Suburban Mobility Authority for Regional Transportation*, at 3 (DOL Mar. 20, 1990) ("Section 13(c) was not intended to create a floor for wages"); UMTA Application, *Utah Transit Authority*, at 3 (DOL Mar. 20, 1989) ("The Department has determined that the proposed 13(c) provision providing ATU-represented employees with the first opportunity of employment in any new jobs . . . is beyond the minimum requirements of Section 13(c)."); FTA Application, *Regional Transportation Commission of Clark County, (Las Vegas) Nevada*, at 5 (DOL Sept. 21, 1994) (finding Section 13(c) does "not operate to create new employment relationships with a third party," nor "require the hiring of a

predetermined workforce"). The purpose of Section 13(c) is not, however, to invalidate overly-protective terms in a Section 13(c) agreement, but rather "to prevent federal funds from being used to destroy the collective-bargaining rights of organized workers." *See Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 17 (1982); *see also Donovan*, *supra*, 767 F.2d at 947 ("states have no automatic entitlement to federal funding for their transit systems, and must satisfy section 13(c) if they desire such assistance").

It is "abundantly clear" that Congress intended Section 13(c) to "be an important tool to protect the collective-bargaining rights of transit *workers*." *See Donovan*, *supra*, 767 F.2d at 947 (emphasis added). Accordingly, the plain language of Section 13(c) indicates it is intended "to protect the interests of *employees*." *See* 49 U.S.C. § 5333(b)(4) (emphasis added). The Guidelines establish that an objection to a term in a Section 13(c) agreement will be deemed insufficient unless it "raises material issues that may require alternative *employee* protections," or "concerns changes in legal or factual circumstances that may materially affect the rights or interests of *employees*." *See* 29 C.F.R. § 215.3(d)(3) (emphasis added). Neither the statute nor the Guidelines provide a means for a transit entity to modify the terms of a Section 13(c) agreement unless the disputed terms materially impact employee's collective bargaining rights. While a transit entity "is free to forego [federal] assistance and thus to adopt any collective bargaining scheme they desire," it may not "eliminate collective bargaining rights and still enjoy federal aid." *See Donovan*, 767 F.2d at 947.

DOL's determination that the terms of a Section 13(c) agreement provide the minimum levels of protection to employees "has been held to be controlling, so that it would be inappropriate for a court to substitute its judgment for the Secretary's." *See Local Div. 732,*

9

*Amalgamated Transit Union v. Metro. Atlanta Rapid Transit Auth.*, 667 F.2d 1327, 1343 (11th Cir. 1982); *see also City of Macon v. Marshall*, 439 F. Supp. 1209, 1223 (M.D. Ga. 1977). *Cf.* 5 U.S.C. § 701(a)(2) (precluding judicial review of "agency action [that] is committed to agency discretion by law"). So long as the six enumerated protections listed in 29 U.S.C. § 5333(b)(2) are included in the Section 13(c) agreement—and there is no genuine dispute whether they are here—the decision that the agreed-to protections are "fair and equitable" is generally unreviewable. *See Donovan*, *supra*, 767 F.2d at 944–46; Guidelines, 60 Fed. Reg. at 62969 (citing *Donovan* for rule on judicial review of certification decisions under Section 13(c)). An even higher level of discretion should be afforded DOL in determining whether an objection is "sufficient."

When a procedural rule is designed primarily to benefit the agency in carrying out its functions—rather than to confer important procedural benefits upon individuals—the action of the agency "is not reviewable except upon a showing of substantial prejudice to the complaining party." *See American Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970); *Tsegay v. Ashcroft*, 386 F.3d 1347, 1355 (10th Cir. 2004). The sufficiency-of-objection rule at issue here is clearly a procedural rule designed primarily to benefit DOL in carrying out its functions. *See* Guidelines, 60 Fed. Reg. at 62964 (DOL "proposed to change the procedures for certifying employee protective arrangements"). Before the Guidelines were implemented in 1995, the regulations implementing Section 13(c) were found to cause "prolonged negotiations" in some cases. *See* Guidelines, Section 5333(b), Federal Transit Law, 60 Fed. Reg. 34072, 34072 (1995). Recognizing that the previous regulations interfered with the "innovative, cost-effective use of Federal funds" the gate-keeping "sufficiency" inquiry was implemented in order "to enhance the

efficiency and predictability of the certification process for all transit grant applications while assuring that the required employee protections are in place." *See* Guidelines, 60 Fed. Reg. at 62964. The Guidelines addressed only "procedural guidelines," and had no impact on "substantive issues." *See id*. at 62965. Accordingly, without a showing of substantial prejudice, DOL's application of the sufficiency-of-objection rule—as a "workload management device[] that acknowledge[s] the reality of high caseloads"—is not reviewable. *See Tsegay*, 386 F.3d at 1356.

Colorado Springs is unable to make a showing of substantial prejudice here. When making the "substantial prejudice" inquiry, courts will compare the outcome of the agency's application of the procedural rule to the outcome of the application preferred by the complaining party. *See Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1230 (10th Cir. 2004). Where the complaining party has a remedy available beyond the regulation—such that there are no "major final consequences" for petitioners—"no substantial prejudice of an irreparable nature exists." *See Delmarva Power & Light Co. v. F.E.R.C.*, 671 F.2d 587, 591–92 (D.C. Cir. 1982); *Aeronautical Radio, Inc. v. F.C.C.*, 642 F.2d 1221, 1235 (D.C. Cir. 1980).

As noted above, even if DOL found Colorado Springs's objection to be "sufficient," DOL would simply direct the parties to negotiate the specified objections and would provide mediation assistance where appropriate. *See* 29 C.F.R. § 215.3(d)(6). But Colorado Springs is already entitled under—and even encouraged by—the Guidelines to commence such negotiations regardless of DOL's "sufficiency" determination. *See* 29 C.F.R. § 215.3(f). Further, if Colorado Springs no longer desires to be bound by the terms of the 1981 agreement, it may return to the bargaining table or forego federal assistance. *See Donovan*, *supra*, 767 F.2d at

947. DOL's sufficiency determination does not affect Colorado Springs's rights in this regard. Accordingly, Colorado Springs fails to show that DOL's decision finding the city's objections "insufficient" amounts to a substantial, prejudicial, and irreparable "major final consequence." *See Delmarva Power & Light Co.*, *supra*, 671 F.2d at 591–92; *Aeronautical Radio*, *supra*, 642 F.2d at 1235.

B.  <u>Provision that Excluded Colorado Springs from Participating in the Development of Alternative Provisions (Claim Seven)</u>

As to Colorado Springs's fifth objection—a provision in paragraph 21 of the 1981 agreement excluding the city from any renegotiation of invalidated terms—Colorado Springs argues that, as a signatory to the 1981 agreement, it should be a participant in any process that leads to the development of alternative Section 13(c) provisions. While Colorado Springs provides no supporting authority, it nonetheless argues that "paragraph (21) thus raises material issues that require the development of alternative protective language under § 215.3(d)(3)(i) of the Department's 13(c) Guidelines."

Colorado Springs argues DOL's determination—that the objection failed to raise material issues requiring alternative employee protections or raise concerns regarding changes in legal or factual circumstances that materially affect the rights or interests of employees—was an abuse of discretion because "it violates basic principles of freedom of contract and purports to create contractual provisions of perpetual duration." This argument ignores the fact that the terms of the 1981 agreement—including the terms excluding Colorado Springs from participating in renegotiation—were the result of collective bargaining. As noted above, if Colorado Springs no longer desires to be bound by these terms, the proper remedy is to return to the bargaining table

or forego federal assistance. *See Donovan*, *supra*, 767 F.2d at 947. Section 13(c) is not intended as a tool to usurp collectively bargained-for contract terms. Accordingly, DOL's determination that Colorado Springs's objection was insufficient—even if reviewable—was not an abuse of discretion.

### C. Adequacy of DOL's Explanation for its Decision (Claim One)

Colorado Springs argues DOL's decision finding the city's objections to be "insufficient" was arbitrary and capricious because the May 17, 2007, letter failed to include DOL's reasoning in reaching its conclusion. While agencies are required to articulate a satisfactory explanation for their actions, "a court reviewing an agency's decision under the arbitrary and capricious standard 'is to uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned' and the court concludes 'that the agency examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1034 (10th Cir. 2002) (quoting *Bagdonas v. Dep't of Treasury*, 93 F.3d 422, 426 (7th Cir. 1996)).

DOL's two-sentence explanation of its decision was indeed terse. A terse administrative decision, however, will still pass muster under the arbitrary and capricious standard so long as the agency's reasoning is apparent from the explanation given. *See Citizens' Comm. to Save Our Canyons*, *supra*, 297 F.3d at 1034–35. Moreover, under the Guidelines, DOL is given only ten days to issue its sufficiency findings. *See* 29 C.F.R. § 215.3(d)(2). "[S]trict time frames within which to work may require an agency to make its decision on a record more slender than desired

and may render acceptable an unusually terse explanation of reasoning." *Puerto Rico Mar. Shipping Auth. v. Fed. Mar. Comm'n*, 678 F.2d 327, 336 (D.C. Cir. 1982).

Here, DOL properly noted the correct standard for determining whether an objection was "sufficient" or "insufficient"—a determination that is committed to the agency's near-complete discretion—and found Colorado Springs failed to show its objections sufficient. While an additional explanation of the "sufficiency" analysis would have been helpful for purposes of review—and perhaps could have discouraged this litigation altogether—DOL's reasoning was sufficiently apparent in light of the standard enunciated in the Guidelines to meet the stringent arbitrary and capricious standard.

D.  Treating Colorado Springs Differently from Other Regulated Entities (Claim Two)

Colorado Springs argues DOL departed from its own precedents established in other cases that show the objected-to portions of the 1981 agreement exceed the minimum requirements of the statute. It is well-established that "[a]gencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departure." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1165 (10th Cir. 2002).

The "sufficiency-of-objection" decision is the only decision made by DOL in this case. While Colorado Springs points me to past decisions showing the objected-to provisions exceed the statutory minimum, the city points me to no prior decisions in which DOL determined that an objection to provisions that exceed the statutory minimum should—without more—be considered "sufficient" under the Guidelines. For example, in *Red Rose Transit Authority*, DOL determined that an intervening state law called into question the meaning of the Section 13(c)

14

agreement's terms and found the objection sufficient on that basis. *See* FTA Grant Application, *Red Rose Transit Authority* (DOL June 30, 2003). Although—as here—the disputed term concerned interest arbitration, there is no indication DOL determined the objection "sufficient" for that reason. In *Central Puget Sound Regional Transit Authority*, DOL found an objection to an arbitration clause to be sufficient, but there is no discussion of the content of the arbitration clause nor whether the arbitration clause exceeded the statutory minimum. *See* Response to Objections, *Central Puget Sound Regional Transit Authority* (DOL Nov. 3, 1998). In *Southern California Regional Rail Authority*,"there were no previously certified protective arrangements" and—as in *Central Puget Sound*—DOL did not discuss the content of the proposed arbitration clause nor whether the clause exceeded the statutory minimum. *See* Response to Objections, *Southern California Regional Rail Authority* (DOL Mar. 29, 1999). In *City of Phoenix*, the previously-certified arrangement was found to have ambiguous terms, and negotiation over the meaning of the ambiguous terms was allowed. *See* Response to Objections, *City of Phoenix* (DOL June 4, 1998). There was no discussion of whether the ambiguous term exceeded the statutory minimum. In *Transportation District of Hampton Roads*, DOL determined that the original Section 13(c) agreement was subject to modification due to a transfer of the grant from one transit entity to another, and found the objections sufficient on this basis. Response to Objections, *Transportation District of Hampton Roads* (DOL Mar. 27, 2000).

The other decisions proffered by Colorado Springs suffer from similar infirmities. *See*, *e.g.*, *Central Arkansas Transit Authority* (DOL Apr. 9, 1998) (no previously-certified agreement); *Regional Transportation Commission of Clark County* (DOL Aug. 13, 1998) (previously-certified arrangement provided sufficient protections; newly-proposed protections

15

not necessary to satisfy statute); *Massachusetts Bay Transportation Authority* (DOL Feb. 28, 1997) (change in state law); *Worcester Regional Transit Authority* (DOL Dec. 29, 1997) (ambiguous terms; no discussion of whether the ambiguous term exceeded the statutory minimum); *Transportation District of Hampton Roads* (DOL Aug. 21, 2000) (ambiguous terms; no discussion of whether the ambiguous term exceeded the statutory minimum); *Metropolitan Tulsa Transit Authority* (DOL Nov. 4, 2003) (interest arbitration clause unenforceable under state law). Accordingly, Colorado Springs fails to show the present decision treated Colorado Springs differently from other regulated entities.

E. Applying the Guidelines in a Manner that Circumvented the Statute (Claim Eight)

Colorado Springs argues that DOL "use[d] the procedural Guidelines to make changes in the substantive requirements of 13(c) or to impose obligations on grantees beyond what the statute requires." Further, "[b]y denying the City's objections and imposing the existing 13(c) protections, the Department misused the Guidelines to avoid the application of existing law, thereby denying the City's right to rely on existing substantive law and applying 13(c) requirements that are not imposed on other public agency grantees."

As noted above, by finding Colorado Springs's objections to be "insufficient," DOL merely allowed the grant to be funded under a previously-certified Section 13(c) agreement. Colorado Springs remains able to renegotiate this agreement at the collective-bargaining table. DOL's actions neither imposed an obligation on Colorado Springs that the city did not already agree to, nor did DOL apply the Guidelines to Colorado Springs in a manner different from that which was applied to other transit entities.

### F. Injunctive Relief (Count Nine)

Colorado Springs has not shown DOL acted in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Accordingly, Colorado Springs's request for injunctive relief is denied.

### G. Declaratory Relief (Count Ten)

Colorado Springs also requests a Declaratory Judgment holding the four provisions of the 1981 agreement objected to in Claims Three, Four, Five, and Six exceed the minimum requirements of Section 13(c). As noted above, prior precedent appears to indicate these four provisions do indeed exceed the minimum requirements of Section 13(c). The question whether Section 13(c) requires—or does not require—these provisions, however, is not at issue in this appeal. The only question is whether DOL acted in an arbitrary and capricious manner when it found Colorado Springs's objections to be "insufficient." Accordingly, resolution of the statutory requirements would neither clarify the legal question at issue, settle the present controversy, nor terminate the uncertainty underlying this proceeding. *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239–44 (1937); *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169–70 (10th Cir. 1995); *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1275–76 (10th Cir. 1989). I therefore exercise my discretion and decline declaratory relief in this case. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1179–80 (10th Cir. 2002).

## VI. CONCLUSION

The Department of Labor made only one administrative determination that is challenged in this case: it determined that Colorado Springs's objections to the 1981 agreement were "insufficient." This determination rest within the discretion of the Secretary of Labor, and

17

Colorado Springs has not met its heavy burden of showing the Secretary acted in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Qwest*, *supra*, 398 F.3d at 1229. Accordingly, the Secretary's May 17, 2007, certification decision in this matter is AFFIRMED. Colorado Springs's requests for injunctive and declaratory relief are DENIED.

Dated: November  20 , 2008.

                                BY THE COURT:

                                 s/Lewis T. Babcock
                                Lewis T. Babcock, Judge